IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE SUBPOENA TO NATIONAL
SCIENCE FOUNDATION, OFFICE
OF INSPECTOR GENERAL

Misc. Action No. 3:18-mc-00006-JAG

Re: Subpoena Duces Tecum for Interview Transcripts in Civil Action No. 3:17-cv-33-NKM-JCH, Western District of Virginia, Charlottesville Division

## OPINION

The movants seek an order compelling the National Science Foundation, Office of Inspector General ("NSF"), to produce transcripts of interviews that it conducted as part of its criminal investigation of Dr. Yi-Heng Percival Zhang. The movants subpoenaed the transcripts for use in the underlying civil proceeding.[1] The NSF has produced the transcripts in the criminal case, yet it refuses to comply with the subpoena in the underlying civil proceeding.

The Court reviews the NSF's failure to comply with the subpoena under the arbitrary and capricious standard set forth in *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 274 (4th Cir. 1999). Because the NSF "entirely failed to consider an important aspect of the problem" when it refused to provide the transcripts to the movants, the Court finds that the NSF abused its discretion in this case. *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Accordingly, the Court will grant the plaintiff's motion to compel.

---

[1] The underlying civil proceeding, currently pending in the Western District of Virginia, involves a business dispute over control of trade secret information. *Bonumose Biochem LLC v. Zhang*, No. 3:17-cv-00033-NKM-JHC (W.D. Va. May 16, 2017).

# I. BACKGROUND

The plaintiff in the underlying proceeding, Bonumose Biochem, LLC ("Bonumose"), alleges that the defendants in that case (and the movants here), Cell-Free Bioinnovations, Inc. ("CFB"), and Dr. Yi-Heng Percival Zhang, misappropriated trade secrets regarding technology for producing tagatose, a rare sugar with significant commercial value. Zhang, a former engineering professor, founded CFB in 2012 to develop his research for commercial purposes. Zhang thereafter hired Daniel Wichelecki as a research scientist and Edwin Rogers as CEO. After CFB fired Rogers, he founded Bonumose, where Wichelecki later joined him.

In April 2016, the movants agreed to sell certain intellectual property rights to Bonumose, including trade secrets related to tagatose. Bonumose alleges that the movants revealed the trade secrets to the Tianjin Institute of Industrial Biotechnology in China in violation of the April 2016 agreement. The movants counter that Rogers founded Bonumose as part of a scheme to steal CFB's trade secrets and cut off CFB's source of funding.

After founding Bonumose, Rogers reported to the NSF that Zhang had defrauded the NSF into awarding grant funds to CFB. The NSF interviewed Rogers and Wichelecki as part of its investigation into Zhang's activities at CFB. The NSF thereafter produced the interview transcripts for Zhang's criminal prosecution.[2] The defendants now wish to use the interview transcripts for their defenses and counterclaims in the underlying civil proceeding.[3]

---

[2] In 2017, a grand jury charged Zhang with conspiracy to defraud the United States, making false claims to the United States, and related crimes. The bench trial concluded on September 13, 2018, but the court has not yet issued an opinion. *United States v. Zhang*, No. 7:17-cr-00073-MFU (W.D. Va. Nov. 2, 2017).

[3] The magistrate judge entered a protective order as to the transcripts in the criminal case. The movants, therefore, cannot access the transcripts in the underlying civil proceeding without a court order.

On June 20, 2018, the defendants sent an email to the NSF asking for transcripts of the NSF's interviews of Rogers and Wichelecki. The NSF denied the request on June 27, 2018. In its decision letter, the NSF first explained that its *Touhy* regulations apply when parties request documents for use in private litigation.[4] After asserting that the Privacy Act prohibited the NSF from producing the transcripts, the NSF explained that it conducted the interviews as part of an ongoing criminal investigation and thus declined to produce the transcripts.

On June 26, 2018, the defendants issued a subpoena decus tecum to the NSF. The NSF responded by decision letter on July 9, 2018, again declining to produce the transcripts. The July 9 decision letter provided three reasons for the NSF's refusal to comply: (1) privacy and law enforcement concerns, (2) the NSF's desire to avoid involving itself in controversial private matters, and (3) the NSF's lack of interest in the civil lawsuit. On July 19, 2018, the movants filed a motion in this Court to compel the NSF to comply with the June 26 subpoena.[5] Following a hearing on the motion to compel, the NSF requested an *in camera* review for the Court to assess the transcripts for sensitive law enforcement information and to delay production until the conclusion of the criminal case.

## II. STANDARD OF REVIEW

The parties dispute the applicable standard of review. In *COMSAT Corp. v. National Science Foundation*, the Fourth Circuit held that courts should review the NSF's refusal to comply with a third-party subpoena under the arbitrary and capricious standard set forth in the

---

[4] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *see also* 45 C.F.R. § 615.5(a) ("No employee may produce official records . . . in response to a demand or request unless authorized to do so by the General Counsel in accordance with this part."). The Court addresses the *Touhy* regulations in its review of the NSF's refusal to comply with the subpoena.

[5] The defendants' subpoena instructs the NSF to produce the interview transcripts to the Richmond office of Woods Rogers PLC. *See* Fed. R. Civ. P. 45(d)(1) (authorizing parties to move "[t]he court for the district where compliance is required" for an order enforcing a subpoena).

Administrative Procedure Act ("APA"). 190 F.3d 269, 274 (4th Cir. 1999) (citing 5 U.S.C. § 702, 704, 706). The court in *COMSAT* concluded that an agency's refusal to comply with a subpoena "is essentially a policy decision about the best use of the agency's resources." *Id.* at 278. Reviewing courts, therefore, must "defer to the agency's judgment, recognizing . . . that 'federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do.'" *Id.* (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984)).

The movants attempt to distinguish *COMSAT* by arguing that an arbitration panel, not a federal court, issued the subpoena in that case. *See id.* at 275-76. But district courts throughout the Fourth Circuit have applied *COMSAT* when a non-party federal agency refuses to comply with a federal court-issued subpoena. For example, a court within this district reviewed the U.S. Attorney's refusal to comply with a federal subpoena under *COMSAT*. *See Saslaw v. Matricardi*, No. 3:04-cv-185, at 3 (E.D. Va. Oct. 12, 2004) ("[T]he Court's review of the U.S. Attorney's decision not to comply with Plaintiffs' subpoena must be reviewed under an arbitrary and capricious or abuse of discretion standard."); *see also Sauer Inc. v. Lexington Ins. Agency, Inc.*, No. 5:13-CV-180-F, 2014 WL 5580954, at *4-6 (M.D.N.C. Oct. 31, 2014) ("[T]he Army Corps acted reasonably and in accordance with its own regulations in denying Defendant's deposition subpoena."); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 746 (D. Md. 2008) ("[T]he Air Force has complied with the strictures of the APA in refusing to produce its officials for depositions."). The Court declines to depart from the weight of authority in the Fourth Circuit, and thus holds that *COMSAT* provides the appropriate standard of review in this case.[6]

---

[6] In *COMSAT*, the Fourth Circuit declined to follow the Ninth Circuit's approach, which the movants urge the Court to adopt here. *Cf. Exxon Shipping Co. v. U.S. Dep't of the Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (holding that Rules 26 and 45 of the Federal Rules of Civil

4

Accordingly, the Court must order the NSF to comply with the movant's subpoena if its "action [was] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* (citing 5 U.S.C. § 706). The NSF abused its discretion if its decision "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm Mut. Auto Ins. Co.*, 463 U.S. at 43 (1983).[7]

### III. DISCUSSION

#### A. Applicable Regulations

When responding to a subpoena in an action in which the NSF is not a party, the NSF's *Touhy* regulations instruct the Inspector General to consider whether:

(1) The purposes of [the *Touhy* regulations] are met;

(2) Allowing such testimony or production of records would be necessary to prevent a miscarriage of justice;

(3) NSF has an interest in the decision that may be rendered in the legal proceeding; and

---

Procedure govern when a non-party federal agency refuses to comply with a subpoena). Rejecting the Ninth Circuit's holding, the Fourth Circuit reasoned that *Exxon* "abrogates the doctrine of sovereign immunity to a significant degree . . . [and] overlooks an important limitation upon this waiver: courts may reverse an agency's decision not to comply only when the agency has acted unreasonably." *COMSAT Corp.*, 190 F.3d at 279. The Court thus declines to review the NSF's decision under Federal Rule of Civil Procedure 45.

[7] Because the movants never addressed *COMSAT* in their opening brief, the movants consider the NSF's argument regarding the appropriate standard of review for the first time in their reply brief. The NSF, therefore, has moved to file a sur-reply to respond to the arguments the movants advanced in their reply brief. Because the NSF never had an opportunity to rebut the defendants' arguments regarding *COMSAT*, the Court will grant the NSF's motion to file a sur-reply.

(4) Allowing such testimony or production of records would be in the best interest of NSF or the United States.

45 C.F.R. § 615.5(b).

*1. Purposes of the Regulations*

The NSF's *Touhy* regulations identify the following purposes: "to promote economy and efficiency in NSF's programs and operations; minimize the possibility of involving NSF in controversial issues not related to its functions; maintain the impartiality of NSF among private litigants; and protect sensitive, confidential information and the deliberative process." *Id.* § 615.1(b). Because the NSF has already produced the transcripts to Zhang in the criminal case, a court order compelling the NSF to produce the transcripts again in the underlying civil proceeding would have no effect on the economy and efficiency of the NSF's operations. Nor would such an order improperly involve the NSF in controversial matters or compromise the NSF's impartiality. Federal agencies often produce documents in private litigation, and they do so without compromising their neutrality.

Neither the Privacy Act, law enforcement privilege, nor deliberate process privilege prohibits disclosure. First, the Privacy Act authorizes disclosure of covered information "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11). The NSF, therefore, may not hide behind the Privacy Act once the Court compels production of the transcripts. Moreover, the NSF may adequately protect any private information with appropriate redactions.

Second, the law enforcement privilege protects "information that would endanger witnesses and law enforcement personnel [or] the privacy of individuals involved in an investigation and information that would otherwise interfere [] with an investigation." *United States v. Marsh*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016) (alterations in original) (quoting *In re*

6

*The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010)). "Courts agree that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies." *Id.* The NSF has failed to show that producing the transcripts would put any witnesses or law enforcement personnel at danger. The NSF's investigation of Zhang and Zhang's criminal trial have both concluded. Disclosure of the "factual information" contained in the transcripts, therefore, would not "thwart governmental processes by discouraging citizens from giving the government information." *Johnson v. Rankin*, No. 2:11CV415, 2011 WL 5358056, at *1-2 (E.D. Va. Nov. 7, 2011) (quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

Finally, the deliberative process privilege "protect[s] . . . advisory opinions, recommendations and deliberations comprising the process by which governmental decisions and policies are formulated." *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The NSF conducted the interviews of Wichelecki and Rogers as part of Zhang's criminal investigation. Because the interviews have nothing to do with the NSF's deliberations regarding governmental policy, the deliberative process privilege does not apply. Accordingly, disclosure of the transcripts would not run counter to the purposes of the NSF's *Touhy* regulations.

## 2. Miscarriage of Justice

Production of the transcripts would prevent a miscarriage of justice. In the movants' response to the July 9 decision letter, the movants asserted that they "have developed evidence suggesting that Mr. Rogers in particular has provided false, misleading and/or incomplete information to the OIG." (Pl.'s Mot. to Compel, Ex. 3, at 2.) The NSF argues that the movants remain free to depose Wichelecki and Rogers in the underlying civil proceeding, but the NSF overlooks the potential value of the transcripts for impeachment purposes. *Cf. Lamb v. Wallace*,

No. 7:16-cv-44, 2018 WL 847242, at *6 (E.D.N.C. Feb. 13, 2018) (explaining that subpoenaed testimony from an informant "may also be relevant to [the informant's] credibility and bias as a witness were she to testify at trial or deposition"). The transcripts, therefore, "[are] crucial for the trial court to adjudicate fairly the rights of the parties in the underlying action." *Ceroni v. 4Front Engineered Sols., Inc.*, 793 F. Supp. 2d 1268, 1279 (D. Colo. 2011) (finding that the agency's refusal to comply with a subpoena violated the arbitrary and capricious standard). Accordingly, the NSF misapplied the second prong of its *Touhy* regulations because it failed to consider the value of the transcripts for impeachment purposes.

### 3. Balance of Interests[8]

The parties agree that the NSF has no interest in this case. If anything, the NSF has an interest in ensuring that the movants enjoy a fair and impartial trial in the underlying civil proceeding. By refusing to comply with the movants' subpoena, the NSF has unreasonably prevented the movants from obtaining crucial information for their defenses and counterclaims in the underlying civil proceeding. The balance of interests favor production.

### B. Arbitrary and Capricious Review

The NSF abused its discretion in refusing to comply with the movants' subpoena. Not only would production of the transcripts have no effect on the economy and efficiency of the NSF's operations, but also the NSF erroneously asserted that the Privacy Act, law enforcement privilege, and deliberate process privilege prohibited disclosure of the transcripts. Because the transcripts contain important information for the movants' defenses and counterclaims in the underlying civil proceeding, production of the transcripts would prevent a miscarriage of justice.

---

[8] The third prong of the NSF's *Touhy* regulations asks whether the NSF has an interest in the outcome of the proceeding, and the fourth prong asks whether disclosure would serve the best interests of the NSF or the United States. Because both prongs require the Court to balance the relevant interests, the Court considers them together.

While the NSF has no direct interest in the outcome of the underlying civil proceeding, it does have an interest in ensuring a fair and impartial trial for the movants. Accordingly, the NSF acted in an arbitrary and capricious manner because its decision "failed to consider important aspects of the dispute, runs counter to the evidence presented, and misapplied [the NSF's] *Touhy* regulations." *Lamb*, 2018 WL 847242, at *6.

## IV. CONCLUSION

For the reasons stated in this Opinion, the Court will grant the movants' motion to compel compliance with subpoena duces tecum. The NSF must produce the interview transcripts to the movants within twenty-one days.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: October 16, 2018
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge